UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

Case No. 09-CR-20199
HON. GEORGE CARAM STEEH

D-1    JOSE NOE MADRIGAL-NEGRETE
D-4    DAVID SALAMON SERRATO-CHAVEZ

    Defendants.
_____/

## ORDER DENYING MOTION TO SUPPRESS [DOC. 69]

This matter comes before the court on defendant David Salamon Serrato-Chavez's and Jose Noe Madrigal-Negrete's motions to suppress statements made by the defendants which were not preceeded by the giving of rights pursuant to Miranda v. Arizona. The Court held an evidentiary hearing on the motion on December 16, 2009. At the hearing, Serrato-Chavez withdrew his motion to suppress after the government indicated it would not seek to introduce the statements during its case-in-chief. For the reasons set forth below, defendant Madrigal-Negrete's motion to suppress is denied.

On Thursday, April 23, 2009, special agents of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") received information that an unidentified Mexican Cartel member had received a shipment of several hundred pounds of marijuana and approximately a half million dollars in U.S. currency at a residence located at 2592 Ferris Street, Detroit, Michigan. The premises was said to be controlled by an Hispanic male named Jose Martinez. At approximately 7:30 p.m. that evening, ICE agents conducted surveillance of the residence. Agents sought to identify the individual known as Jose Martinez, for whom they had a physical description, including his height, weight and that he was dressed in a red shirt and blue jeans.

At approximately 10:45 p.m., agents observed an Hispanic male fitting the description of Jose Martinez, who entered the residence through the front door. At 11:00 p.m., agents approached the front door to conduct a "knock and talk" procedure with the resident of the upper unit of 5295 Ferris Street. A woman answered the door and identified herself as Sulma Ulloa, the renter of the house. The agents asked Ulloa if she knew Jose Martinez, and she said she did not. Ulloa permitted Special Agents Jeffrey Schmidt and Cliff Divers into the house. Once inside, the agents saw the individual they had observed enter the home, and detected a strong smell of marijuana inside the home. The agents asked the woman for her identification and for permission to search the house for "Jose Martinez." The woman provided verbal consent to search the house.

The agents spoke in Spanish with the man they saw enter the house, who identified himself as "Jose." He was later identified as defendant Jose Noe Madrigal-Negrete. The agents noticed Jose appeared nervous and that he was avoiding eye contact with them. The agents asked Jose for his identification, but he said he did not have any on him, and that it was downstairs in the basement apartment. The woman confirmed that Jose lived in and rented the space in the basement. Jose told the agents that the entrance to the basement was outside the house, and that he had the key.

Jose told the agents that nobody else lived with him in the basement. Jose also told the agents that nobody else was currently in the basement. Jose and two of the agents walked outside to the side of the house where the entrance to the basement was located. Jose took a key from his pants pocket and opened the basement door. When Jose attempted to move away from the door, the perimeter officer held him against the wall. Upon entering the staircase to the basement, the agents described a chaotic scramble by five Hispanic males, and found firearms, drugs and currency.

2

The next day, ICE Special Agent Kevin Burgin interviewed the six men who were arrested at 2592 Ferris Street. Before Agent Burgin questioned Madrigal-Negrete he provided him with an Advice of Rights Form. Agent Burgin asked Madrigal-Negrete to write his name at the top of the form, initial beside each paragraph that detailed his rights, and sign the bottom of the form if he wanted to waive his right to an attorney before questioning. Madrigal-Negrete wrote his name at the top of the form and signed the bottom of the form, agreeing to speak with agents without an attorney. After signing the waiver, however, Madrigal-Negrete told the agents he did not want to speak to them without an attorney. The agents ended the interview and did not receive a statement from Madrigal-Negrete. Madrigal-Negrete was transported to the Wayne County Jail, where he was lodged on administrative immigration charges.

Madrigal-Negrete was not advised of his right to counsel and to remain silent until he was brought before the Magistrate Judge for arraignment five days after he was seized. At his arraignment, Madrigal-Negrete was charged with the firearm and drug counts pending before this court.

Under the Fourth Amendment, a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One such exception is a search that is conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). In order for consent to be valid, it must be given freely and voluntarily. Id. at 223. The government bears the burden of proving that the consent was given voluntarily. Id. at 248. Consent is deemed voluntary when it is "unequivocal, specific and intelligently given, uncontaminated by any duress or coercion." United States v. McCaleb, 552 F.2d 717, 721 (6th Cir. 1977).

Whether consent to search is voluntarily given is a question of fact to be

3

determined based upon the totality of the circumstances. Schneckloth, 412 U.S. at 223; United States v. Crowder, 62 F.3d 782, 787 (6th Cir. 1995). The Sixth Circuit has identified several factors a court should examine when it decides whether consent is voluntary:

> First, a court should examine the characteristics of the accused, including the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; and whether the individual understands his or her constitutional rights. Second, a court should consider the details of the detention, including the length and nature of detention; the use of coercive or punishing conduct by the police; and indications of more subtle forms of coercion that might flaw an individual's judgment.

United States v. Ivy, 165 F.3d 397, 402 (6th Cir. 1998).

In this case, agents produced badges and identified themselves as police upon knocking at Ulloa's door. Agent Schmidt spoke with Ulloa and Madrigal-Negrete in Spanish, so there could be no question that they understood what was being asked of them. Both agents spoke in normal voices throughout their encounter with Madrigal-Negrete and Ulloa. The agents were dressed in raid gear that clearly identified them as police. There was nothing abnormally intimidating about Schmidt and Divers attributable to their behavior.

One primary area of disagreement in this case is whether Madrigal-Negrete provided a written consent prior to opening the door to the basement apartment. On this narrow question, the court finds the testimony of Ulloa more plausible and more accurate than the testimony of the agents. Because the court looks at the totality of the circumstances, however, written consent is not crucial to a determination that Madrigal-Negrete voluntarily gave his verbal consent to permit the agents to enter the basement to retrieve his identification.

Sulma Ulloa testified that Madrigal-Negrete showed Agent Schmidt some

identification upstairs in her apartment, proving that he was not Jose Martinez. Both Divers and Schmidt, however, testified that Madrigal-Negrete said he did not have his identification on his person, and that it was located downstairs in the basement apartment. Madrigal-Negrete was not questioned on this topic at the evidentiary hearing. The court finds the agents' testimony about asking Madrigal-Negrete to retrieve his identification from the basement to be credible. The agents were working off of a tip that identified a Jose Martinez, and Madrigal-Negrete said that his name was Jose when the agents first came to the house. It is true that Ulloa told the agents that she did not know Jose Martinez, but because Madrigal-Negrete fit the confidential informant's physical description, and said his name was Jose, the agents were exercising reasonable diligence by investigating further. Again, even if the court accepts Ulloa's testimony that identification papers of some kind were furnished by defendant upstairs, there remains legitimate reasons for agents to seek his consent to look at his basement dwelling.

Ulloa did not accompany Jose and the agents to the outside door to the basement, so she cannot testify what happened after Jose left her apartment. Agents Schmidt and Divers both testified that they escorted Jose around the outside of the house to the basement door. Agent Schmidt described how Jose started to get ahead of him, so Schmidt tapped him on the shoulder and told him to wait up. When they got to the door, Jose reached into his pants pocket to retrieve his key. Jose put the key into the door, turned the key, and opened the door. The court credits Schmidt and Divers' description of events surrounding the walk from Ulloa's apartment to the basement door. There is no evidence that Jose was coerced into giving the agents access to his basement apartment.

The court finds that the agents obtained Madrigal-Negrete's voluntary verbal

5

consent to search the basement apartment. Madrigal-Negrete understood what was being asked of him, and there were no threats or coercion employed by the agents against him. Furthermore, the court finds that Ulloa granted her voluntary verbal consent for the agents to search the upstairs apartment. Now, therefore,

IT IS HEREBY ORDERED that defendant Jose Noe Madrigal-Negrete's motion to suppress and/or to dismiss the indictment is DENIED.

Dated: March 16, 2010

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 16, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk